PHYLLIS SELBY *v.* FRANCOISE PELLETIER ET AL.
(2010)

HULL, DUPONT and BORDEN, Js.

Argued November 4, 1983—decision released March 6, 1984

*Andrew Messina,* for the appellants (named defendant et al.).

*Lester Katz,* for the appellants (defendants Arne Dalene and Theodore Thompsen).

*Bruce E. Bergman,* for the appellee (plaintiff).

HULL, J. This case involves a claim for one-half of the commission claimed to be due on the aborted sale of a house in East Granby.

The plaintiff alleged that as a licensed real estate saleswoman she had an arrangement with the defendant Tobacco Valley Realty, Inc., a licensed broker, to share the commission earned on any sales she achieved under a listing with that broker. She claimed that she secured a listing of property owned by the defendants Arne H. Dalene and Theodore Thompsen, which she turned over to the defendant Francoise Pelletier, who was the president of Tobacco Valley Realty, Inc. She further claimed that she secured buyers who entered into a written contract on May 22, 1978, to buy the property for $25,500. Finally, she claimed that on June 29, 1978, at the scheduled closing, the defendants Dalene and Pelletier "entered into an agreement to abort and cancel said agreement of sale in an effort to avoid payment to the plaintiff of the commission she was entitled to when she produced the purchasers ready, willing and able to buy said premises."

The court found that an arrangement did exist for shared commissions earned on sales produced by the plaintiff from listings she took in the name of Tobacco Valley Realty, Inc. It found that the plaintiff procured the signing of a contract on May 22, 1978. It further found that the buyers balked at closing and that the owners agreed to release them from the contract. Thereafter, the defendant owners entered into a "Termination Agreement" with Francoise Pelletier, terminating the sales agreement and waiving the commission. They had concluded that the agreement was enforceable against both parties.

The court found a "near conspiracy" and that "chicanery" surrounded the drafting and signing of the termination agreement. The court, therefore, found that there was "overwhelming evidence" of tortious interference with a business relationship so as to defraud the plaintiff of her commission and rendered judgment

against all four defendants on the basis of tortious interference with the plaintiff's contractual rights. All four defendants appealed.[1]

Since the complaint alleged tortious interference against Dalene and Pelletier only, the judgment cannot stand against the defendants Thompsen and Tobacco Valley Realty, Inc.[2]

The case against Francoise Pelletier, individually, and against the owner Arne H. Dalene breaks down to a question of whether there was sufficient evidence for the court to find that by agreeing to terminate the sales agreement they tortiously interferred with the plaintiff's contractual right to a commission.

The 4 Restatement (Second), Torts § 766 states: "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

There is no question of the existence of such a cause of action in Connecticut. "We, in this state, recognize that a cause of action does exist for unlawful interference with business and that it is not essential to that cause of action that it appear that the tort has resulted in a breach of contract to the detriment of the plain-

---

[1] This appeal was originally filed in the Appellate Session of the Superior Court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 3 (c).

[2] Paragraph 7 of the complaint states: "That on or about June 29, 1978, the date provided for the closing of said sale, the defendants Arne H. Dalene and Francoise Pelletier entered into an agreement to abort and cancel said agreement of sale in an effort to avoid payment to the plaintiff of the commission which she was entitled to when she produced the purchasers ready, willing and able to buy said premises." A plaintiff may not allege one cause of action against one defendant and recover from another defendant against whom no such cause of action was alleged in the complaint. See *Schaller*

tiff. *Wyeman* v. *Deady*, 79 Conn. 414, 65 Atl. 129 [1906]; *Skene* v. *Carayanis*, 103 Conn. 708, 131 Atl. 497 [1926]. As we said in the *Skene* case (p. 714), 'The law does not, however, restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interferences with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry. Full, fair and free competition is necessary to the economic life of a community, but under its guise, no man can by unlawful means prevent another from obtaining the fruits of his labor.'

"It does not follow from this, however, that a plaintiff may recover for an interference with a mere possibility of his making a profit. On the contrary, wherever such a cause of action as this is recognized, it is held that the tort is not complete unless there has been actual damage suffered. Pollock, Torts (14th Ed.), p. 441; Winfield, Law of Tort (2d Ed.), p. 643; Prosser, Torts, pp. 1016 et seq. To put the same thing in another way, it is essential to a cause of action for unlawful interference with business that it appear that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit." *Goldman* v. *Feinberg*, 130 Conn. 671, 674–75, 37 A.2d 355 (1944). The essential elements of this cause of action are: "(1) the defendant's conduct was tortious in that it was fraudulent; and (2), as a proximate consequence of that fraudulent conduct, the plaintiff suffered actual

v. *Roadside Inn, Inc.*, 154 Conn. 61, 65, 221 A.2d 263 (1966); *Johnson's Nurseries, Inc.* v. *Ratick*, 32 Conn. Sup. 553, 556, 343 A.2d 647 (1975). A plaintiff's right to recover against a defendant is limited by the allegations of his complaint and a plaintiff, therefore, cannot recover for a cause of action which has not been properly pleaded. *Strimiska* v. *Yates*, 158 Conn. 179, 185, 257 A.2d 814 (1969); *Johnson's Nurseries, Inc.* v. *Ratick*, supra, 556. "It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." *Lundberg* v. *Kovacs*, 172 Conn. 229, 232, 374 A.2d 201 (1977); *Nash Engineering Co.* v. *Norwalk*, 137 Conn. 235, 239, 75 A.2d 496 (1950).

loss, as alleged, in being deprived of an opportunity which he would otherwise have had to earn his commission . . . ." *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 461, 242 A.2d 708 (1968). "A cause of action for tortious interference with a business expectancy requires proof 'that the defendant was guilty of fraud, misrepresentation, intimidation or molestation; *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 461, 242 A.2d 708 [1968]; *Skene* v. *Carayanis,* 103 Conn. 708, 715, 131 A. 497 [1926]; or that the defendant acted maliciously. *Goldman* v. *Feinberg,* 130 Conn. 671, 675, 37 A.2d 355 [1944].' *Kecko Piping Co.* v. *Monroe,* 172 Conn. 197, 201–202, 374 A.2d 179 (1977)." *Jones* v. *O'Connell,* 189 Conn. 648, 660, 458 A.2d 355 (1983).

Thus, to impose liability for tortious interference it is a necessary finding that there was a reasonable probability that the plaintiff would have made a profit. "A plaintiff states an actionable cause by alleging that the defendant intentionally interfered with a business or contractual relationship of the plaintiff and that the plaintiff, as a result, has suffered an actual loss." *Herman* v. *Endriss,* 187 Conn. 374, 377, 446 A.2d 9 (1982); *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 415, 363 A.2d 86 (1975); *Taylor* v. *Sugar Hollow Park, Inc.,* 1 Conn. App. 38, 39, 467 A.2d 935 (1983).

The issue before this court is whether or not Dalene or Pelletier tortiously interfered with Selby's rights to a commission. All of the elements of the cause of action as delineated above must be satisfied. Concerning the requirement that the plaintiff must suffer an actual loss, the court reasonably could have found that but for the execution of the agreement to terminate the purchase and sale contract, wherein any rights to a commission were waived, Selby would have been entitled to a set percentage of the commission. It appears, therefore, that except for the conduct of the defendants, which

was allegedly tortious interference, "there was a reasonable probability that the plaintiff would have . . . made a profit." *Goldman* v. *Feinberg,* supra, 675.

As stated above, in addition to requiring an actual loss, a cause of action for tortious interference with a contractual or business relationship requires intentional tortious conduct which is fraudulent in nature. The court found that such conduct had occurred. After reviewing the entire record, we disagree.

The testimony in this case reveals that the buyers, Harvey and Bernadette Plourde, arrived at the closing deeply concerned about certain excavation and soil removal problems on the lot in question. Harvey Plourde testified that they did not arrive at the closing with the intention of terminating the deal, but were merely concerned with whether they, as buyers, would have to pay the expense of removing the pile of soil or whether the closing could be delayed until the owners of the lot completed this work. After discussing the problems, the buyers asked the owners if they would remove the soil. The owners said they could not at that time, but would do so at some future point in time. Plourde then requested that the closing date be postponed until that work was done. The owners did not want to postpone the date and, therefore, held firm. Although the owners stated to the Plourdes that they could sell the lot to someone else for a higher price, they indicated that they would give the buyers back all of their money and that if the buyers were still interested in the property after the removal work was complete, the parties could "start again." Because the Plourdes did not want to close until the work on the property was complete and because the owners did not wish to postpone the closing, the parties decided to draft the termination agreement. There is no evidence from which it may be inferred that Arne Dalene refused to go through with the deal because he wished to

defraud the plaintiff of her share of the commission. The parties were obviously concerned about their obligation regarding the commission because the waiver provision was incorporated within the agreement. The evidence shows, however, that the waiver also deprived Pelletier and Tobacco Valley of a share in the commission, that the owners were willing to complete the work in the future and that the Plourdes were unhappy with the status of the deal at that time, all of which do not establish an intent to defraud on the part of Dalene. The parties wished to terminate the deal and avoid any expense incident thereto. The fact that Dalene may have known that Selby would not collect anything due to the agreement does not form a basis for a finding that he had any intent to defraud. The owners may well have assumed that Pelletier, as a broker, had the authority to act on Selby's behalf or that, in any event, no one was entitled to the commission where the buyers and sellers mutually agreed to terminate the deal.

As concerns the allegations of tortious interference against Pelletier, there is no evidence of fraud or wrongful interference on her part. Although Pelletier testified that she never indicated that she was authorized by Selby to sign the termination agreement, there is evidence that she acted on the belief that as a broker she had the authority to waive the commission because state law permits only licensed brokers to collect commissions. There is also evidence that she assumed that the custom in the real estate business establishes that she would not be liable to the plaintiff unless the commission had actually been paid,[3] and that she felt, under the circumstances where both the buyers and the sellers mutually agreed to a termination of the deal, that no

---

[3] In the case of *Sheketoff* v. *Prevedine,* 133 Conn. 389, 392, 51 A.2d 922 (1947), the court held that liability under an agreement to share "the commission earned" on the sale of real estate was contingent upon payment of the commission by the owner.

one, including herself, was entitled to the commission. She thought, therefore, that she could properly sign the agreement. Furthermore, the record reveals that Pelletier had never met or dealt with Dalene prior to the date set for closing. The evidence does not support a finding of an intent to defraud and, therefore, that element of the tort is not satisfied as to Pelletier.[4]

We cannot act as a factfinder or draw conclusions of facts from the primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found, thereby establishing that the trial court could reasonably conclude as it did. *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 676–77, 443 A.2d 486 (1982); *Grinold* v. *Grinold,* 172 Conn. 192, 194, 374 A.2d 172 (1976); *Zolan, Bernstein, Dworken & Klein* v. *Milone,* 1 Conn. App. 43, 47, 467 A.2d 938 (1983). We must focus on the conclusion of the trial court, as well as on the path by which it arrived at that conclusion, to determine whether it is a legally correct and factually supported conclusion. *Rodriguez* v. *New Haven,* 183 Conn. 473, 476–77, 439 A.2d 421 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222, 435 A.2d 24 (1980); *Zolan, Bernstein, Dworken & Klein* v. *Milone,* supra, 47.

After reviewing the exhibits and transcript in this case, we are persuaded that the court could not reasonably and logically conclude as it did and, therefore, that the court was clearly erroneous in light of the evidence

---

[4] In view of our disposition of this matter, it is unnecessary to consider whether a suit for tortious interference with a contractual relationship may lie against the other party to the contract or its agent. Ordinarily, such a suit lies for tortious interference with a contract by a third party. See *Herman* v. *Endriss,* 187 Conn. 374, 377 n.4, 446 A.2d 9 (1982); 4 Restatement (Second), Torts § 766A. In addition, the general rule is that the agent may not be charged with having interfered with a contract of the agent's principal. See *North American Van Lines, Inc.* v. *Amodio World Wide Moving & Storage Co.,* United States District Court, District of Connecticut, No. H-82-960, June 22, 1983.

in rendering a verdict for the plaintiff for tortious interference with a business relationship. See Practice Book § 3060D; *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 222–23.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.