[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Michael Richter, has filed a fifth amended complaint against the Danbury Hospital; Danbury Radiology Associates (DRA); and William Goldstein (Goldstein). The action CT Page 7278 sounds in nine counts: (1) tortious interference with a contractual relationship (as to Goldstein); (2) intentional infliction of emotional distress (as to Goldstein); (3) assault (as to Goldstein); (4) unfair trade practice (as to Danbury Hospital, and/or the DRA, and/or Goldstein); (5) breach of contract (as to Danbury Hospital); (6) tortious interference with contractual relationship (as to Goldstein); (7) breach of contract (as to Danbury Hospital); (8) breach of covenant of good faith and fair dealing (as to the DRA); and (9) breach of employment agreement (as to DRA).
He alleges the following facts. In February, 1968, Danbury Hospital and Goldstein entered into a written agreement whereby the hospital hired Goldstein to provide radiological services for the hospital. In accordance with that contract, he agreed to create and administer a Department of Radiology within the hospital, and to provide physicians to staff that radiology department. The contract also provided that Goldstein was to operate the department consistent with the hospital's personnel and administrative policies. Goldstein chose to create a professional corporation (the DRA) to staff the Radiology Department, and became an employee, director and president of the DRA.
Richter is a physician licensed to practice in the State of Connecticut specializing in radiology. In May of 1973, he was hired by Goldstein, became an employee of the DRA and was appointed by Danbury Hospital and Goldstein to the Department of Radiology where he has served ever since. The employees of the DRA, including Richter, entered into employment contracts with it in which they agreed to comply with all applicable rules and regulations of Danbury Hospital. From 1973 to the present, Richter has been a member of the medical staff of the hospital with clinical privileges in radiology and has been an active, participating radiologist there.
The rights, privileges and obligations of staff physicians at Danbury Hospital are set forth in its bylaws. Section 8 of those bylaws provides that staff physicians' clinical privileges can be lost or restricted if the "professional conduct of a practitioner is, or is reasonably certain to be, detrimental to patient safety or to the delivery of quality patient care, or is reasonably certain to be disruptive to Hospital operations. . . ." The bylaws further set forth certain procedures for a change in clinical privileges, providing for a review and a "fair hearing" CT Page 7279 with regard to any changes that may result in changes in clinical privileges. On July 9, 1991, at a meeting of the Board of Directors of the DRA, a majority of the Directors voted to terminate Richter's employment agreement. The vote was not preceded by a discussion nor any explanation as to the reasons for Richter's termination.
To date, no charges have been brought nor any hearing held, pursuant to the aforesaid bylaws. Richter has been denied access to the radiological department and denied all privileges within the hospital. Since that denial, he has been unable to continue his radiology practice in the area, and has been allegedly denied his livelihood.
Danbury Hospital has filed a motion for summary judgment on counts four, five, and seven. Richter has vehemently opposed that motion. DRA and Goldstein also move for summary judgment as to counts one, two, three, four, six, eight, and nine. Richter has also opposed that motion with the same vigor as he has to the hospital's motion.
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doty v.Mucci, 238 Conn. 800, 805. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way."Miller v. United Technologies Corp., 233 Conn. 732, 751.
The movant has the burden of demonstrating the absence of any genuine issue of material fact. Gupta v. New Britain GeneralHospital, 239 Conn. 574, 582. A material fact has been defined as a fact that will make a difference in the result of the case.Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . ." (Internal quotation marks omitted.) Home InsuranceCo. v. Aetna Life Casualty Co., 235 Conn. 185, 202. CT Page 7280
"The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." 2830Whitney Avenue Corporation v. Heritage Canal DevelopmentAssociates Inc., 33 Conn. App. 563, 567. "If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.) Id., 569.
The court will first consider the hospital's motion for summary judgment. It seeks summary judgment on Richter's claims that it breached its contract with him and that its actions violated the Connecticut Unfair Trade Practices Act (CUTPA) under § 42-110(g) of the General Statutes.[1] The thrust of Richter's breach of contract claim is that the hospital's bylaws constituted an enforceable contractual relationship between himself and Danbury Hospital.[2] He argues that the hospital breached the contract by reducing his clinical privileges without following the fair hearing procedures set out in the hospital's bylaws.
The hospital asserts two arguments in support of its motion: (1) that the hospital's impairment of Richter's privileges and the denial of his access to its facilities does not constitute a reduction or termination of privileges because such impairment or denial results from the hospital's exclusive contract with another physician; (2) that it is not required to conduct a hearing because such a hearing is applicable only where an adverse action is premised upon issues of professional competency and conduct and, in the present case, Richter's professional competency and conduct are not in issue. This court agrees that a right to a fair hearing is only applicable where an adverse action is premised on matters bearing on professional competency and conduct. This conclusion draws strong support from the unambiguous language of the said bylaws.
"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used therein rather than from one party's subjective perception of the terms. . . . Absent a statutory warranty or definitive contract language, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of CT Page 7281 fact. . . ." (Citations omitted; internal quotation marks omitted.) Tremaine v. Tremaine, 235 Conn. 45, 57. When a contract provision is unambiguous, its interpretation presents an issue of law for determination by the court. Mulligan v. Rioux,229 Conn. 716, 740. "When, however, a contract provision is ambiguous or contract provisions are internally inconsistent, a question of fact is involved." Bank of Boston Connecticut v. Avon MeadowAssociates, 40 Conn. App. 536, 540.
Richter argues that he received an adverse recommendation which reduced his clinical privileges to that of a private office radiologist[3] and that "[u]nder the words of the Bylaws in the case at bar, any adverse recommendation triggers the right to a hearing." Article III, section 3(B)(3)(b) of the bylaws provides that the executive committee may "[m]ake an adverse recommendation in which case the practitioner will be entitled to the due process rights provided for in APPENDIX I, THE FAIR HEARING PLAN . . ." Appendix I provides a definition of an adverse action: "An adverse action is a recommendation or decision which would adversely affect a practitioner's appointment, status, or clinical privileges as a member of the Medical Staff."
Although, Richter's clinical privileges may have been adversely affected, Appendix I, section (C)(6), states that "the Hearing provided for in these Bylaws is to resolve, on an intraprofessional basis, matters bearing on professional competence and conduct."
In Dutta v. St. Francis Reg. Med. Center, 867 P.2d 1057 (Kan. 1994), a radiologist sued a hospital because it revoked her access to its radiology facilities. The Hospital revoked her access because it entered into an exclusive contract with another radiologist. The bylaws in the Dutta case provided that "[a]ny practitioner who receives notice of a recommendation of the Executive Committee or the Board of Directors . . . that will adversely affect his appointment to or status as a member of the Medical Staff or his exercise of clinical privileges will be entitled to a hearing. . . ." Further, Subsection (j) of the bylaws stated that, "The hearing provided for in these Bylaws is for the purpose of resolving, on an intra-professional basis, matters bearing on professional competency and conduct." That court stated that since the plaintiff's professional competency and conduct were not at issue, to find that a hearing was necessary would require that subsection (j) be ignored. To hold CT Page 7282 that Danbury Hospital was required to provide Richter with a hearing would require that this court ignore Appendix I, section C, subsection (6) of its bylaws.
Richter continues his argument by asserting that an exclusive contract does not exist between DRA and Danbury Hospital, and therefore the contact cannot be used as a reason for revoking his privileges within the Hospital. He does not argue, however, that his privileges were revoked on account of his competency and conduct. Further, the Hospital has submitted the affidavit of Gerard D. Robilotti, the executive vice-president of the hospital, which states that Richter lost his privileges because he was no longer employed by the DRA.[4] Since the language in the bylaws clearly and unambiguously requires a hearing only for matters bearing on professional competency and conduct, the hospital was not required to provide Richter with a hearing.
The evidence clearly establishes that there is no genuine issue of material fact, and the hospital's motion for summary judgment as to counts five and seven is granted.
Richter alleges in count eight that the DRA breached the implied covenant to act in good faith with regard to the plaintiff's employment contract. In the present case, Richter was an "employee at will" and, as such, his employment relationship was terminable at the will of either party. Battista v. UnitedIlluminating Co., 10 Conn. App. 486, 495. In Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 572, the Court held that an at will employee may not successfully challenge his discharge unless the reason for his discharge involves a violation of public policy.
Richter argues that his discharge involves a violation of public policy in that his termination "deprives the population of the expertise of one of the community's most skilled physicians in an important area of medical care." Richter further argues that the DRA disregarded its bylaws when it terminated him.
To prevail under the public policy exception, Richter must prove an "improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Internal quotation marks omitted.) Battista v. UnitedIlluminating Co., supra, 497. "[T]he employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." Morris v. Hartford Courant Co.,
CT Page 7283200 Conn. 676, 679. Moreover, "there must be more than an incidental effect on public policy. The defendant's reason for discharging the plaintiff must contravene public policy." Battista v. UnitedIlluminating Co., supra, 497-98.
Richter alleges in his complaint and provides evidence in his affidavit that Goldstein "displayed a dislike and antipathy" toward him. He continues, in his memorandum of law, that the reason for his termination was based on Goldstein's personal animosity toward him. It is clear from his allegations and the evidence before the court that the reason for his discharge does not involve a violation of public policy. Any effect that Richter's discharge has on depriving the public of his expertise is an incidental and an unintended effect. There being no genuine issues of fact to resolve, DRA's motion for summary judgment as to count eight is granted.
In count nine, Richter claims that DRA failed to pay expenses and wages or salaries as called for in the employment agreement. DRA has presented evidence showing that, pursuant to the employment contract, Richter was entitled to full salary during the ninety day period following his termination, and that indeed he did receive his full salary during that ninety day period.
Richter has also submitted evidence, which consists of his own affidavit and an agreement between himself and DRA dated January 18, 1991. That evidence reveals that additional money may be owed in addition to what he has already received. DRA has failed to demonstrate that there is no genuine issue of material fact as to whether Richter is entitled to additional money under the employment contract. Accordingly, DRA's motion for summary judgment as to count nine of the fifth amended complaint is denied.
In count two, it is asserted that Goldstein's conduct, as stated in count one of the complaint, constituted an intentional infliction of emotional distress. In count one, Richter alleged that Goldstein tortiously interfered with his employment contract with DRA by using his superior skill and dominant position to convince the board of directors to terminate his employment. He also attempts to bolster his emotional distress claim by arguing in his memorandum of law that Goldstein committed an assault upon him. The facts related to the assault, however, are not incorporated into Richter's emotional distress claim (count two). Therefore, the allegations related to the assault will not be CT Page 7284 considered in determining whether there is a genuine issue of material fact regarding Richter's emotional distress claim.
A cognizable claim of intentional infliction of emotional distress must establish: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result from his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."Petyan v. Ellis, 200 Conn. 243, 253. "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury." Parsons v. SikorskyAircraft Division, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 280394 (March 1, 1996, Levine J.), quoting Reed v. Signode Corp., 652 F. Sup. 129, 137 (D. Conn. 1986).
For liability to exist, the threshold for the requisite behavior begins "where conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Internal quotation marks omitted.) Whelan v. Whelan, 41 Conn. Sup. 519, 523, quoting 1 Restatement (Second), Torts § 46, p. 73, comment (d).
In the present case, the plaintiff has alleged and provided evidence that Goldstein displayed a dislike and antipathy toward him, that Goldstein recommended a reduction in his staff privileges to that of a private office radiologist, and that Goldstein's influence over the board of directors of the DRA led to his termination. In Collins v. Gulf Oil Corp., 605 F. Sup. 1519,1599 (D. Conn. 1985) (Dorsey, J.), the plaintiff testified to what he considered improper motives for the defendant's conduct regarding the plaintiff's termination. The court found that the plaintiff failed to show that his termination was conducted in an egregious or unconscionable manner. Without such a showing, the court held that the plaintiff could not maintain an action for the intentional infliction of emotional distress.
Similarly, the facts alleged and evidence produced viewed in the light most favorably to Richter fail to show that his termination was conducted in an egregious or unconscionable CT Page 7285 manner. Thus, the court finds that as a matter of law Goldstein's conduct was not "extreme and outrageous." Accordingly, Goldstein's motion for summary judgment as to count two is granted.
In count three, the plaintiff asserts an assault claim against Goldstein. He claims and provides evidence within his affidavit that he was in the hospital's radiological department reviewing an X-ray of a patient, when Goldstein, menacingly and threateningly approached him, ripped the X-ray from the shadow box as he was reviewing the films and ordered him out of the radiological department.
Assault "has been defined as any attempt with force or violence to do corporeal offense to another, coupled with the present apparent ability to complete the act. An assault cannot be accomplished by words alone. There must be an overt act evidencing some corporeal threat. A mere preparation for an assault is not a civil wrong." Comrie v. Hinds, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 521854 (April 18, 1996), quoting, Wright, J. RitzGerald W. Ankerman, Connecticut Law of Torts (3rd Ed. 1991) c. 2, § 6, p. 8-9. In the present case, the evidence before the court reveals that a jury could not reasonably find that Goldstein's conduct constituted an attempt with force or violence to do corporeal offense to Richter. Accordingly, Goldstein's motion for summary judgment as to count three is granted.
In counts one and six, Richter alleges that Goldstein tortiously interfered with his employment contracts with DRA and Danbury Hospital, respectively. Richter alleges and has provided evidence that Goldstein's dislike and antipathy towards him motivated Goldstein to convince DRA and Danbury Hospital to terminate business relations with him.
Our courts have "long recognized a cause of action for tortious interference with contract rights or business relations." Kelley Property Development, Inc. v. Lebanon,226 Conn. 314, 340 n. 30. The elements of tortious interference with a business relationship are "the existence of a contractual or beneficial relationship, the defendants' knowledge of that relationship, the intent to interfere with it, and the consequent actual loss suffered by the plaintiff." Hart, Nininger CampbellAssociates Inc. v. Rogers, 16 Conn. App. 619, 629. CT Page 7286
"[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation. . . . [A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means." KelleyProperty Development, Inc. v. Lebanon, supra, 340 n. 30. "A motive to injure another or to vent one's ill will on him serves no socially useful purpose given these guidelines." Centi v.Lexington Health Care Center, Superior Court, judicial district of New Haven at New Haven, Docket No. 383535, (May 1, 1997, Licari, J.).
Goldstein argues that, because he is an agent of DRA, he cannot be found to have intentionally interfered with the employment contract between Richter and it. "[T]he general rule is that the agent may not be charged with having interfered with a contract of the agent's principal." Selby v. Pelletier,1 Conn. App. 320, 327 n. 4. "An agent, however, can be held liable for such interference or inducement if he did not act legitimately within the scope of his duty but used the corporate power improperly for personal gain." (Citation omitted.) Murray v.Bridgeport Hospital, 40 Conn. Sup. 56, 61.
In the present case, the evidence submitted reveals that Goldstein may have caused DRA and Danbury Hospital to terminate their business relationships and/or contracts with Richter because of his own personal animosity towards Richter. This raises a genuine issue of material facts as to whether Goldstein used his corporate power for personal gain.
Goldstein further argues that DRA did not breach its employment contract with Richter; therefore, he could not have tortiously interfered with that contract. DRA did not have to breach Richter's employment contract, however, for Goldstein to have tortiously interfered with said contract. To sustain his cause of action for the tortious interference of a contract, he only needs to plead and prove that Goldstein knew of his business relationship with DRA, intended to interfere with it, and Richter suffered a loss because of that interference. Hart Nininger Campbell Associates Inc. v. Rogers, supra.
Goldstein knew about Richter's business relationship and/or contract with DRA and with Danbury Hospital. The evidence CT Page 7287 submitted reveals that there is a genuine issue of material fact as to whether Goldstein intended to interfere with Richter's business relationship and/or contract with DRA and Danbury Hospital. Intent is virtually always a question of fact. The evidence reveals that there is also a genuine issue of material fact as to whether Richter has suffered a loss. Goldstein has failed to show that there is no genuine issue of material fact, his motion for summary judgment as to counts one and six is denied.
In count four of the complaint, he claims that Danbury Hospital, DRA, and Goldstein violated Connecticut's Unfair Trade Practice Act (CUTPA). He alleges that Danbury Hospital and/or Goldstein and/or DRA have prevented him from utilizing the radiological equipment and services of the hospital. These actions have denied "him the ability to practice his specialty and [has] discourag[ed] referring doctors and patients who attempt to avail themselves of the plaintiff's skill. knowledge and experience in radiology and particularly mammography."
CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 42-110b (a) of the General Statutes. In order to enforce this prohibition, CUTPA provides a private cause of action to "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice. . . ." Section 42-110g (a) of the General Statutes; see generally Fink v. Golenbock, 238 Conn. 183, 212-13.
In determining whether an act is unfair, the courts have adopted the following criteria known as the "cigarette rule": "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." Williams FordInc. v. Hartford Courant Co., 232 Conn. 559, 591. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Fink v. Golenbock, supra, 215. CT Page 7288
In the present case, Richter attests in his personal affidavit that after his discharge, Danbury Hospital, DRA, and Goldstein, dissuaded patients at the hospital who requested his services from reaching him or knowing of his whereabouts. The defendants' move for summary judgment on the ground that CUTPA does not apply to the employment relationship. In Quimby v.Kimberly Clark Corporation, 28 Conn. App. 660, 670, the Appellate Court, relying on Banerjee v. Robert, 641 F. Sup. 1093 (D. Conn. 1986), held that the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA." Richter argues that the actions complained of in the fourth count of the complaint occurred after his termination. "[T]he court is unable to find, however, any authority to support the proposition that CUTPA applies to employer-employee relationships where the conduct complained of occurs following the employee's termination of employment."Mafcote Industries v. Swanson, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 150309 (November 7, 1997, D'Andrea, J.). The motions for summary judgment submitted by Danbury Hospital, DRA, and Goldstein are hereby granted as to count four.
Danbury Hospital's motion for summary judgment as to Counts Four (4), Five (5) and Seven (7) is granted.
DRA's motion for summary judgment as to Counts Four (4) and Eight (8) is granted, and as to Count Nine (9) is denied.
Goldstein's motion for summary judgment as to Counts Two (2), Three (3) and Four (4) is granted, and as to Counts One (1) and Six (6) is denied.
An order may enter in accordance with the foregoing.
Moraghan J.