[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The plaintiff, Bridgeways Communication Corp., filed a four count complaint against Time Warner Inc., Time Warner CT Page 10547 Entertainment Co., L.P. and Time Warner Cable (collectively the "defendants"), alleging unfair trade practices, abuse of process and tortious interference with contract and business expectancy. The defendants filed counterclaims against the plaintiff and against ValueVision International, Inc. ("ValueVision"), alleging, inter alia, tortious interference with contractual relations, tortious interference with prospective contractual and business relations, abuse of process, unjust enrichment and unfair trade practices. The plaintiff seeks to strike the counterclaims asserted against it.
The defendants' counterclaims set forth the following facts: In 1991, ValueVision purchased or leased channel time on the defendants' cable systems. In July of 1993, the defendants began negotiations with ValueVision for an agreement to establish uniform terms available to all of the defendants' systems. As a result of these negotiations, ValueVision and the defendants entered into a one-year cable television carriage agreement on January 1, 1994.
In October of 1993, the plaintiff, once the owner of broadcast television station WHAI-TV in Bridgeport, Connecticut, entered an affiliation agreement with ValueVision whereby the plaintiff would exhibit ValueVision's home shopping programming on its station in return for a monthly fee. Also in October 1993, the plaintiff and ValueVision entered a right of first refusal agreement giving ValueVision the opportunity to buy WHAI in the event the plaintiff ever sought to sell it.
On or about September 9, 1993, the plaintiff notified the defendants that it sought carriage on the defendants' cable systems in New York pursuant to the "must-carry" provisions of the Cable Television Consumer Protection and Competition Act of 1992. The Cable Television Consumer Protection and Competition Act of 1992 requires cable companies to carry local television stations if such stations (1) can deliver a sufficiently strong signal to reach the cable operating system's connection points, and (2) agree to indemnify the cable system against future copyright liability. The defendants informed the plaintiff that they were not required to carry the plaintiff's signal because: (1) the plaintiff could not provide a strong enough signal; (2) carriage would increase potential copyright liability; and (3) WHAI did not carry local programming of interest to consumers in the New York City area. CT Page 10548
On March 4, 1994, in response to the defendants' refusal to carry its programming, the plaintiff filed a must-carry complaint before the Federal Communications Commission ("FCC") to compel the defendants to carry its signal. This complaint was, according to the defendants, comprised of material misrepresentations relating to the must-carry requirements, in that: (1) the plaintiff falsely represented to the FCC that its theoretical "direct licensing proposal" obviated the need for copyright liability assurances; and (2) the plaintiff falsely represented to the FCC that the defendants had refused access to its facilities to install fiber optic equipment to provide an adequate signal when, in fact, the defendants had worked with the plaintiff for signal quality testing and offered reasonable access. Thus, according to the defendants, the must-carry complaint constituted a baseless action.
In November of 1994, while the FCC was considering the plaintiff's must-carry petition, the defendants filed a market modification petition with the FCC, seeking the FCC to modify its definition of the New York Area of Dominant Influence ("ADI") to exclude WHAI because the station was not "local" within the meaning and purpose of the must-carry provisions, and therefore not eligible for carriage by the New York systems. In response to this petition, on December 22, 1994, the plaintiff filed an opposition which repeated its position regarding the signal strength and copyright indemnification issues.
On August 17, 1994, prior to any decision by the FCC, the plaintiff entered an agreement to sell its interest in WHAI, including the right to pursue FCC proceedings, to ValueVision pursuant to ValueVision's right of first refusal. The deal was concluded in December of 1994. In both the October 1993 affiliation agreement and the August 1994 sale agreement, the plaintiff received a premium from ValueVision for purported must-carry rights enjoyed by WHAI.
On January 19, 1995, the defendants and ValueVision extended their one-year affiliation agreement, which had expired on January 1, 1995, and entered into a seven-year non-exclusive affiliation agreement for carriage of ValueVision programming by the defendants, including carriage on the defendants' New York systems. As a requirement of the new agreement, ValueVision withdrew the must-carry complaint filed by WHAI, which was still pending before the FCC, and agreed that during the seven-year affiliation period neither WHAI nor any other station owned by CT Page 10549 ValueVision would seek carriage on any of the defendants' systems in the New York ADI pursuant to the must-carry provisions.[1]
On April 27, 1995, the plaintiff commenced this action, alleging that the defendants' refusal to carry WHAI on its New York systems caused it to receive a reduced price for the station when ValueVision purchased it.[2] In counts one and two, the plaintiff alleges unfair trade practices against the defendants, pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110 et seq., for denying the plaintiff the ability to compete in the marketplace by refusing access to the defendants' cable operating systems and for refusing to grant access to the systems pursuant to the must-carry regulations. In count three, the plaintiff alleges abuse of process arising out of the defendants' "sham" opposition to the plaintiff's must-carry petition filed before the FCC, and in count four the plaintiff alleges tortious interference with contract and business expectancy arising out of the defendants' communication with, and solicitation of, ValueVision in the face of the plaintiff's business relationship with ValueVision.
On December 17, 1997, the defendants filed a motion to amend its answer to add counterclaims against the plaintiff. The motion to amend was granted on February 3, 1998. The defendants' amended answer includes nine counterclaims, five of which are applicable to the instant motion to strike. In the first counterclaim, the defendants allege tortious interference with contractual relations against the plaintiff due to the plaintiff's false representation to ValueVision that WHAI was legally entitled under the must-carry provisions to carriage on the defendants' systems and the plaintiff's communications with, and solicitation of, ValueVision. The second counterclaim alleges tortious interference with prospective contractual and business relations against the plaintiff because of the plaintiff's interference in the ongoing relationship between the defendants and ValueVision. The third counterclaim alleges abuse of process against the plaintiff in instituting its must-carry complaint before the FCC because the complaint constituted numerous material misrepresentations and false statements in an attempt to: (1) assist ValueVision in its efforts to obtain a "lucrative" carriage agreement with the defendants; (2) increase the price for which ValueVision would buy WHAI; and (3) subvert the must-carry procedures to force the defendants to carry ValueVision programming. The fifth counterclaim seeks unjust enrichment against both ValueVision and the plaintiff. The claim against CT Page 10550 ValueVision alleges that ValueVision has derived substantial benefit from the consideration specified in the January 19, 1995 agreement. The claim against the plaintiff alleges that in the present action, the plaintiff seeks to derive substantial benefit from the defendants by wrongfully wielding the must-carry provisions. The seventh counterclaim alleges unfair trade practices under CUTPA against the plaintiff for wrongfully asserting the "purported" must-carry rights.
On March 6, 1998, the plaintiff filed a motion to strike the defendants' first, second, third, fifth and seventh counterclaims, arguing that these counterclaims are barred by their respective statute of limitations. In addition, the plaintiff argues that each counterclaim against it fails to state a claim upon which relief can be granted for failure to allege the essential elements of each of the causes of action.
On March 30, 1998, the defendants filed an opposition to the motion to strike, arguing that: (1) the plaintiff's statute of limitations arguments cannot be raised on a motion to strike; (2) even if the statute of limitations arguments can be so raised, the defendants have properly asserted each counterclaim within the applicable limitations period; and (3) each counterclaim challenged by the plaintiff adequately alleges the elements of the causes of action asserted therein.
"A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." Fairfield Lease Corp. v. Romano's Auto Service,4 Conn. App. 495, 496, 495 A.2d 286 (1985). The motion to strike "admits all facts well pleaded; it does not admit conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.) Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the [pleadings] . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.) Liljedahl Brothers, Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990). However, the court must construe the counterclaim "in a manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank,219 Conn. 465, 471, 594 A.2d 1 (1991). Therefore, the court must view the facts "in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them." (Internal quotation marks CT Page 10551 omitted.) Zeller v. Mark, 14 Conn. App. 651, 654, 542 A.2d 752
(1988). Where the facts provable under the allegations would not support a counterclaim, the motion to strike must be granted.Alarm Applications Co. v. Simsbury Volunteer Fire Co.,179 Conn. 541, 545, 427 A.2d 822 (1980).
 A.
The plaintiff initially argues that the first, second, third and seventh counterclaims are time barred by the applicable statute of limitations. The defendants counter that the plaintiff may not raise statute of limitations defenses on a motion to strike.
The first, second and third counterclaims are governed by General Statutes § 52-577, which provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." The seventh count, alleging a violation of CUTPA, is governed by General Statutes § 42-110g (f), which provides: "An action under this section may not be brought more than three years after the occurrence of a violation under this chapter."
Generally, "[a] claim that an action is barred by the lapse of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike. Practice Book § 164. . . . A motion to strike might . . . deprive a plaintiff of an opportunity to plead matters in avoidance of the statute of limitations defense." (Citations omitted.) Forbes v. Ballaro,31 Conn. App. 235, 239, 624 A.2d 389 (1993). The use of a motion to strike to raise the defense of the statute of limitations is, however, permitted in certain limited situations. "The first is when `[t]he parties agree that the complaint sets forth all the facts pertinent to the question whether the action is barred by the Statute of Limitations and that, therefore, it is proper to raise that question by [a motion to strike] instead of by answer.'" Id., quoting Vilcinskas v. Sears, Roebuck Co.,144 Conn. 170, 171-72, 127 A.2d 814 (1956). "The second is where `a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attaches to the right — it is a limitation of the liability itself as created, and not of the remedy alone." Id., 239-40, quoting DeMartino v.Siemon, 90 Conn. 527, 528-29, 97 A. 765 (1916). A motion to strike is also appropriate where a party "anticipates the Statute CT Page 10552 of Limitations and endeavors to overcome its effect by appropriate allegations in the complaint" or counterclaim.Morrisette v. Archambault, 31 Conn. Sup. 302, 303, 329 A.2d 622
(1974), citing Radezky v. Sargent Co., 77 Conn. 110, 114,58 A. 709 (1904).
It is undisputed that the second and third exceptions do not apply to the defendants' first, second and third counterclaims. The plaintiff asserts, however, that the first exception applies because the plaintiff "agrees that the relevant dates set forth in [the defendants'] counterclaims are true." Nevertheless, it is apparent that there is no such agreement between the parties simply by virtue of the fact that the defendants allege in the opposition to the motion to strike that there are facts not contained in the counterclaim which would avoid the statute of limitations. See Dufault v. Mastrocola, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 543343 (March 1, 1996, Hale, J.) (holding that "[b]ecause the plaintiff argues that the complaint does not allege all relevant facts necessary to determine whether his claims are barred by the applicable statute of limitations, the first exception" did not apply to the case).
In opposition to the motion to strike, the defendants rely on different theories, including tolling of the statute of limitations, which would, if proven, avoid the statute of limitations defense. Absent an agreement between the parties that the facts alleged in the counterclaims constitute all the facts necessary to the determination of whether the statute of limitations applies, the defendants should be given an opportunity to affirmatively plead matters in avoidance of the statute of limitations defense. See Lovely v. Moore Alvord Ins.Agency, Superior Court, judicial district of Litchfield, Docket No. 067825 (June 5, 1995, Pickett, J.). The motion to strike the first, second and third counterclaims on this basis is denied.
The Court will now turn to the seventh counterclaim.
In the seventh counterclaim the defendants allege a violation of CUTPA, and the plaintiff moves to strike based on the statute of limitations for CUTPA actions. The statute of limitations defense for CUTPA actions falls under the second exception to the general rule that the statute of limitations may not be raised on a motion to strike because the CUTPA claim is a statutorily created cause of action. See Capitol West Associates v. SouthernCT Page 10553New England Telephone Co., Superior Court, judicial district of Hartford-New Britain at Hartford (Housing Session), Docket No. 5337 (July 1, 1996, DiPentima, J.); Szabo v. Scopp, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 046455 (April 6, 1995, Curran, J.). Therefore, the defense is properly raised on a motion to strike.
However, the motion is denied because the counterclaim fails to allege the date on which the purported CUTPA violations occurred, and therefore the court is unable to determine when the applicable limitation period commenced.
Under General Statutes § 42-110g (f), the statute of limitations for CUTPA violations runs from the occurrence of a violation. See Fichera v. Mine Hill Corp., 207 Conn. 204, 212,541 A.2d 472 (1988). It is not clear from the allegations in the defendants' counterclaims exactly when the alleged violation of CUTPA occurred. The plaintiff argues that the violations of CUTPA occurred no later than November of 1994, when it filed its final supplemental pleading in the must-carry proceedings before the FCC. According to the plaintiff, since the defendants' motion to amend the answer to include the counterclaims was filed on December 17, 1997, the CUTPA counterclaim is time barred. The defendants argue that the last possible date for CUTPA violations to have occurred was December 28, 1994, the date that the plaintiff and ValueVision closed the August 1994 sale of WHAI.
The counterclaims fail to allege either the date that the defendants discovered any purported violation of CUTPA nor an exact date of a CUTPA violation. Viewed in a light most favorable to sustaining the legal sufficiency of the allegations, the court is unable to determine the date from which to measure the running of the three-year limitations period. See Doyle v. Lafayette Bank Trust Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 300338 (July 1, 1993, Lager, J.) (8 C.S.C.R. 799).
In addition, the allegations of the counterclaims do not foreclose the possibility that the statute of limitations may have been tolled by a continuing course of conduct by the plaintiff in regard to the alleged CUTPA violations. See Ficherav. Mine Hill Corp., supra, 207 Conn. 209-13 (discussing "continuing course of conduct" applicable to the tolling of the statute of limitations in a CUTPA action); Daum v. Rare CoinInvestments Portfolios, Inc., Superior Court, judicial district CT Page 10554 of Fairfield at Bridgeport, Docket No. 302436 (August 23, 1995, Hauser, J.) (denying motion for summary judgment on statute of limitations ground because "continuing course of conduct" applicable to the tolling of the statute of limitations in a CUTPA action); Szabo v. Scopp, supra, Superior Court, Docket No. 046555 (denying motion to strike defendants' CUTPA counterclaim based on running of statute of limitations because defendants alleged "continuing course of action"). But see S. Pope, Inc. v.Pope Exterminating, Superior Court, judicial district of Middlesex, Docket No. 066712 (November 17, 1993, Higgins, J.) (8 C.S.C.R. 1288) (granting motion for summary judgment based on running of CUTPA statute of limitations even though continuing course of conduct alleged because "[a]s a matter of law, the `continuing course of conduct' doctrine is inapplicable to prevent the bar of" the CUTPA statute of limitations). Viewing the allegations of the defendants' counterclaims in a light most favorable to sustaining their legal sufficiency, the defendants should be given the opportunity to affirmatively plead matters in avoidance of the plaintiff's CUTPA statute of limitations defense. See Lovely v. Moore Alvord Ins. Agency, supra, Superior Court, Docket No. 067825. The plaintiff's motion to strike the seventh counterclaim based on the running of the statute of limitations for CUTPA actions is denied. That does not fully dispose of the legal challenges to Count 7. The plaintiff also claims that this count is legally insufficient to state a claim on which relief can be granted. That claim is denied for reasons more fully set out later in this opinion.
 B.
The plaintiff also moves to strike each of the defendants' counterclaims against it on the ground that each counterclaim fails to state a claim upon which relief can be granted. The defendants argue in opposition that the counterclaims adequately plead the claims asserted therein. The court will separately address this common claim as to each count to which it is addressed.
 1.
In the first counterclaim, the defendants allege tortious interference with contractual relations. "A claim for tortious interference with contractual relations requires the [claimant] to establish (1) the existence of a contractual or beneficial relationship, (2) the [actor's] knowledge of that relationship, CT Page 10555 (3) the [actor's] intent to interfere with the relationship, (4) the tortious nature of the interference, and (5) a loss suffered by the [claimant] was caused by the [actor's] tortious conduct."Collum v. Chapin, 40 Conn. App. 449, 452, 671 A.2d 1329 (1996), citing Robert S. Weiss Associates, Inc. v. Wiederlight,208 Conn. 525, 535-36, 546 A.2d 216 (1988). "[F]or a [claimant] to successfully prosecute such an action it must prove that the [actor's] conduct was in fact tortious. This element may be satisfied by proof that the [actor] was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the [actor] acted maliciously. . . . [A]n action for intentional interference with business relations . . . requires the [claimant] to plead and prove at least some improper motive or improper means. . . . [A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." (Citations omitted; internal quotation marks omitted.) Robert S. Weiss Associates, Inc. v. Wiederlight, supra, 536.
The plaintiff claims that (1) no contract subsisted between the defendants and ValueVision at the time the interference alleged in the counterclaims took place, and therefore the defendants have failed to meet the first element of the cause of action for tortious interference with contractual relations, and (2) any connection between the alleged wrongful acts and the alleged harm suffered is too remote and attenuated to establish proximate causation, thus failing to meet the fifth element of the claim.
"[I]n order to plead a legally sufficient cause of action for tortious interference with contract rights, the [claimant] must allege the existence of a contractual relationship. " Marshall v.Bessemer Trust Co., Superior Court, judicial district of Litchfield, Docket No. 065718 (April 18, 1995, Pickett, J.) (granting motion to strike for, inter alia, failure to allege elements of cause of action for tortious interference with contractual relationship because plaintiff alleged only "negotiations" and not an existing contract). In paragraphs 33 and 37 of the counterclaims, the defendants allege that they entered a one-year contract with ValueVision on January 1, 1994, and extended that relationship by a seven-year affiliation contract on January 19, 1995. Therefore, at the time the alleged misrepresentations were made to ValueVision by the plaintiff "in 1993 and 1994," as stated in paragraph 47 of the first counterclaim, a "contractual or beneficial relationship" existed CT Page 10556 between ValueVision and the defendants. The fact that the January 1, 1994 contract and the January 19, 1995 contract can be considered "separate" agreements is of no moment since the defendants allege in paragraph 49 that the damages that they suffered include "lost profits from its contracts to carry ValueVision's programming, including profits from its January 1994 and January 1995 carriage agreements with ValueVision." The defendants have sufficiently alleged that a contractual or beneficial relationship existed between themselves and ValueVision, satisfying the first element of a cause of action for intentional interference with contractual relations.
The plaintiff also argues that the defendants failed to allege how the purported wrongful conduct by the plaintiff is connected to the harm suffered by the defendants such that it establishes proximate cause. "Proximate cause is ordinarily a question of fact." Coburn v. Lenox Homes, Inc., 186 Conn. 370,384, 441 A.2d 620 (1982).
Because of the favorable inferences the court is required to extend to a nonmoving party when considering a motion to strike, this court denies the motion to strike the first counterclaim on that basis.
 2.
The plaintiff argues that the second counterclaim, alleging tortious interference with prospective contractual and business relations, also fails to state a claim upon which relief may be granted. "`One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
`a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
`(b) preventing the other from acquiring or continuing the prospective relation.'" Blake v. Levy, 191 Conn. 257, 261 n. 2,464 A.2d 52 (1983), quoting 4 Restatement (Second), Torts § 766B (1979). "An action for tortious interference with a business expectancy is well established in Connecticut. The plaintiff need not prove that the defendant caused the breach of an actual contract; proof of interference with even an unenforceable CT Page 10557 promise is enough." Golembeski v. Metichewan Grange No. 190,20 Conn. App. 699, 702, 569 A.2d 1157 (1990). "The law does not . . . restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interferences with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry. Full, fair and free competition is necessary to the economic life of a community, but under its guise, no man can by unlawful means prevent another from obtaining the fruits of his labor.
"It does not follow from this, however, that a plaintiff may recover for an interference with a mere possibility of his making a profit. On the contrary, wherever such a cause of action as this is recognized, it is held that the tort is not complete unless there has been actual damage suffered. . . . To put the same thing in another way, it is essential to a cause of action for unlawful interference with business that it appear that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit." (Citations omitted; internal quotation marks omitted.) Selby v. Pelletier, 1 Conn. App. 320,323, 472 A.2d 1285 (1984). The essential elements of this cause of action are: (1) that the defendant's conduct was tortious; and (2) that as a proximate consequence of the conduct, the claimant suffered actual loss as alleged, in being deprived of an opportunity which he would otherwise have had. See id., quotingBusker v. United Illuminating Co., 156 Conn. 456, 461,242 A.2d 708 (1968).
The plaintiff argues that the defendants' second counterclaim fails to state a claim for tortious interference with prospective contractual and business relations because the defendants have failed to allege that the interference caused the defendants to lose prospective contractual or business relations. According to the plaintiff, this is indicated by the ongoing contractual relationship between ValueVision and the defendants. Thus, the plaintiff argues that since there has been no interference preventing ValueVision and the defendants from entering a relationship or continuing their relationship, as evidenced by their ongoing affiliation, the defendants have failed to state a claim.
Because the law does not restrict its protection to rights resting upon completed contracts, however, and prohibits CT Page 10558 interferences with the right to pursue lawful business; see Selbyv. Pelletier, supra, 1 Conn. App. 323; the defendants have not failed to state a claim on this basis. The plaintiff's motion to strike on this ground is denied.
 3.
The plaintiff also argues that the defendants' third counterclaim, alleging abuse of process, fails to state a claim upon which relief can be granted. "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." (Internal quotation marks omitted.) Mozzochi v.Beck, 204 Conn. 490, 494, 529 A.2d 171 (1987); see Restatement (Second) Torts § 682 (1977). The plaintiff argues that the complaint fails to state such a claim because the connection between the alleged wrongful acts by the plaintiff and the alleged harm suffered by the defendants is too attenuated to establish proximate cause, and because the alleged harm is too generalized to support such a claim.
The defendants' third counterclaim sufficiently states a claim for abuse of process. Paragraphs 58 and 60 of the third counterclaim allege that the plaintiff's must-carry complaint comprised of numerous material misrepresentations and false statements and that these misrepresentations and false statements were used to accomplish a purpose for which the FCC's legal process was not designed, including: (1) to assist ValueVision in obtaining a lucrative national carriage agreement with the defendants; (2) to increase the price for which ValueVision would buy WHAI; and (3) to subvert the must-carry procedures to force the defendants to carry ValueVision programming. These allegations sufficiently state a claim for abuse of process, and therefore the plaintiff's motion to strike on the grounds of lack of allegation of proximate cause and over-generalization of the allegations is denied.
Because the parties did not raise the fact that the litigation initiated has not yet terminated, the Court will not address that issue. Normally, however, a claim for vexatious litigation requires a plaintiff to allege that the previous law suit was initiated maliciously, without probable cause, and has already terminated in the plaintiff's favor. Vandersluis v. Weil,176 Conn. 353, 356, 407 A.2d 982 (1978). CT Page 10559
 4.
In the fifth counterclaim, the defendants allege unjust enrichment against the plaintiff. The plaintiff moves to strike this claim for failure to state a cause of action because the defendants have failed to allege that the plaintiff received any unjust benefit. According to the plaintiff, the counterclaim seeks to recover as unjust enrichment the "substantial benefit" that the plaintiff seeks to derive from the defendants in the current action, and this does not properly state a claim for unjust enrichment.
"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 S. Williston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Citations omitted; internal quotation marks omitted.) HartfordWhalers Hockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276,282-83, 649 A.2d 518 (1994).
The defendants have failed to state a cause of action for unjust enrichment against the plaintiff because the defendants have failed to allege the elements of such a cause of action. In paragraph 67 of the fifth counterclaim, the defendants allege that "in this action, [the plaintiff] seeks to derive a substantial benefit from [the defendants]." The defendants' claim for unjust enrichment arising out of the mere institution of this lawsuit by the plaintiff fails to allege any benefit to the plaintiff, unjust failure to pay for a benefit or detriment as the result of nonpayment. The plaintiff's motion to strike the fifth counterclaim is granted. CT Page 10560
 5.
Finally, the plaintiff moves to strike the seventh counterclaim, alleging a violation of CUTPA, for failure to state a claim upon which relief can be granted. The criteria for determining whether a practice violates CUTPA includes: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Fink v.Golenbock, 238 Conn. 183, 215, 680 A.2d 1243 (1996).
The plaintiff's sole argument in support of its motion to strike is that the only injury alleged by the defendants in its claim for a violation of CUTPA is that it did not maximize its profits on the ValueVision contracts, and that "[t]his is not the type of loss that can give rise to a CUTPA claim." Thus, it appears that the plaintiff challenges the allegations only with regard to the third prong of the "cigarette rule."
Because CUTPA is remedial in nature and should be liberally construed in favor of those whom the legislature intended to benefit; see Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480,492, 656 A.2d 1009 (1995); and because all three criteria do not need to be satisfied to support a finding of unfairness under CUTPA; see Fink v. Golenbock, supra, 238 Conn. 215; the plaintiff's motion to strike on the basis of the defendants' failure to allege sufficient injury or loss is denied.
In summary, the plaintiff's motion to strike the first, second and third counterclaims on the basis that they are time barred by the applicable statute of limitations is denied because, generally, a claim that an action is barred by the passage of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike, and the instant circumstances regarding the first, second and third counterclaims do not meet any exceptions to this general rule. In CT Page 10561 addition, the plaintiff's motion to strike the seventh counterclaim on this same basis is denied, even though an exception to the general rule is raised as to this counterclaim, because the counterclaim fails to allege the date on which the purported CUTPA violations occurred.
The motion to strike the first counterclaim, alleging tortious interference with contractual relations, is denied because, in reviewing this motion, the court is required to accord the nonmoving party all favorable inferences.
The motion to strike the second counterclaim, alleging tortious interference with prospective contractual and business relations, is denied because the law does not restrict its protection to rights resting upon completed contracts and prohibits interferences with the right to pursue lawful business. The defendants have stated a claim on this basis.
The motion to strike the third counterclaim, alleging abuse of process, is denied. The allegations of the counterclaims sufficiently state a cause of action for abuse of process, and therefore the plaintiff's arguments challenging the counterclaim for lack of any allegation of proximate cause and for over-generalization of the allegations is meritless.
Plaintiff's motion to strike the fifth counterclaim, alleging unjust enrichment, is granted because the defendants' claim, arising out of the mere institution of this lawsuit by the plaintiff, fails to allege any benefit to the plaintiff, unjust failure to pay for a benefit or detriment as the result of nonpayment, and because a claim for unjust benefit based on the mere institution of a lawsuit has no foundation in or applicability to a cause of action for unjust enrichment.
Finally, the plaintiff's motion to strike the seventh counterclaim, alleging a violation of CUTPA, is denied because the plaintiff's argument on the basis of the defendants' failure to allege proper injury or loss is insufficient considering that all three criteria of the "cigarette rule" do not need to be satisfied to support a finding of unfairness under CUTPA.
FLYNN, J.